UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAZENDRA COLLINS, WILLIE TEAGUE, and LAWRENCE TEAGUE, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 21 C 2913 ) |
| CITY OF CHICAGO and M.A. STYCZYNSKI, | ) Judge Rebecca R. Pallmeyer ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In this lawsuit, Plaintiffs Lazendra Collins, Lawrence Teague, and Willie Teague allege that various officers of the Chicago Police Department ("CPD") violated the U.S. Constitution and Illinois state law during a confrontation in May 2020. In a prior written opinion, the court granted summary judgment on several of Plaintiffs' claims.[1] Left standing are a Fourth Amendment claim and two tort claims against Defendant Officer M.A Styczynski and, as against the City of Chicago, *respondeat superior* claims arising out of the state law claims. The case is set for trial next month.

Plaintiffs have moved [106] to exclude the testimony of Officer Paul Amelio, the City's expert on police practices. As explained below, the motion is granted in part; much of Officer Amelio's proposed testimony is excluded, but the court defers decision on a portion of his testimony pending *in camera* review.

## BACKGROUND

I. **Factual and Procedural Background**

The claims in this case are centered around an altercation between Plaintiffs and several CPD officers in May 2020. Because the factual background is laid out in detail in the court's earlier ruling, relevant facts are only briefly summarized here. (*See* Summ. J. Op. [93] at 2–11.)

On May 25, 2020, George Floyd was killed by a police officer in Minneapolis, Minnesota;

---

[1] *Collins v. City of Chicago*, No. 21 C 2913, 2024 WL 5007836 (N.D. Ill. Dec. 6, 2024).

subsequently, protests and civil unrest erupted in cities across the country. (*Id.* at 3.) On May 31, 2020, there were reports of looting at The Brickyard, a shopping mall in northwest Chicago, prompting a sizeable CPD response. (*Id.*) Among the CPD officers assigned to The Brickyard that day were Officers Mark Styczynski ("Styczynski"), Eddie Gollaza ("Gollaza"), and Jorge "George" Cerda ("Cerda"). Plaintiffs claim they were at The Brickyard to get something to eat, saw this police presence, and, curious, cut through the mall's parking lot to see what was going on. (*Id.* at 3–4.)

What happened next is hotly disputed by the parties; but according to Plaintiffs, Officer Cerda shattered the rear window of Plaintiffs' Jeep SUV by striking it with his baton. (*See id*. at 6–7.) Cerda, who is not a party to this case, acknowledges he broke the window. But in his telling, he struck the window "reflexively" in response to the reverse lights of the car turning on, evidently to avoid being hit by the vehicle. (*Id.* at 6.) In response, Plaintiffs exited their vehicle, approached nearby CPD officers, and verbally confronted them about the broken window. Plaintiff Lazendra Collins recorded much of this confrontation on her cell phone. (*Id.* at 6.) The video shows Plaintiffs approaching and following police officers, who are waving their batons—in an effort, according to Defendants, to create distance between themselves and Plaintiffs. (Defs. LR 56.1 Statement of Undisputed Material Facts [84] ¶¶ 35–36.) Eventually, Officer Styczynski arrested Plaintiff Lawrence Teague for disorderly conduct and brought him to the ground. Teague asserts that after he was on the ground, he was struck with a baton; this portion of the interaction was not caught on the video. (Summ. J. Op. [93] at 8–9.) The video does show that soon after this confrontation, Cerda reached through the open door of the Jeep, prompting Collins to shout "get out my mom's car" and put her phone camera within inches of Cerda's face. He yells "get back" and swings his baton at her at least twice. (*Id.* at 9.)

Plaintiffs filed this lawsuit on May 31, 2021, bringing several federal constitutional and state law claims, under both 28 U.S.C. § 1983 and Illinois state tort law. The City moved for summary judgment [83] on July 29, 2024; the court granted this motion in part on December 6,

2

2024 [93]. The claims against Officer Gollaza were summarily dismissed, and while Officer Cerda was involved in the altercation, he was not named as a defendant in this case, meaning that the City and Officer Styczynski are the only remaining Defendants.

II.     **Officer Amelio's Opinions**

The City has identified Paul Amelio as a proposed expert witness on police practices. Amelio, an active-duty CPD officer, serves as "Team Leader" and "lead trainer" for the CPD SWAT Team. (Amelio Rep. [106-1] at 3.) In this position, Officer Amelio "develop[s] curricula and provide[s] training for SWAT Team members" for multiple law enforcement agencies across several jurisdictions.[2] (Id.) Amelio reviewed materials pertinent to this case, including the depositions of Plaintiffs, the depositions of the involved CPD officers, the Second Amended Complaint, and the video footage. (Id.) If permitted to testify, Amelio would offer an opinion that the conduct of CPD officers in this case was both "reasonable" and "consistent with their training under the circumstances with which they were presented." (Id. at 5.) His report explains the forms of training that CPD officers receive, noting that this training "follows the nationally and generally accepted police practice as it pertains to the use of force, outlined in *Graham v. Connor*, 490 U.S. 386 (1989)." (Id. at 7.) The report also contends that the video shows CPD officers waving their batons in an "'X' like motion," which, according to Officer Amelio, is a "force mitigation tactic[]" used by officers to keep their distance from potential threats. (Id. at 6–7.) Amelio opines that this motion, combined with the lack of "any torque from [the] hips," shows that the CPD officers "did not swing the baton with intention to injure." (Id. at 7–8.)

Plaintiffs have moved to exclude this testimony. They contend that admitting Officer Amelio's opinions would improperly intrude on the fact-finding role of the jury. (Pl. Mot. [106] at 3–5.) The City opposes the motion and, after briefing, the court heard oral argument on

---

[2] These agencies include the FBI Chicago Regional SWAT Team, New Jersey DHS Tactical Team," the United States Secret Service Search Warrant Team, and various other local suburban police departments and SWAT teams. (Amelio Rep. [106-1] at 3.)

3

September 16, 2025. The court's ruling follows.

## **DISCUSSION**

I. **Legal Standard**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). *See Haley v. Kolbe & Kolbe Millwork Co.*, 863 F.3d 600, 611 (7th Cir. 2017). These authorities provide that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise," so long as the opinion is sufficiently reliable and based on a sound methodology. *See* FED. R. EVID. 702. The District Court has a "gatekeeping obligation" to evaluate "(1) the proffered expert's *qualifications*; (2) the *reliability* of the expert's methodology; and (3) the *relevance* of the expert's testimony." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (cleaned up). To be relevant, the expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *see also* FED. R. EVID. 401 (explaining the general standard for relevance).

II. **Analysis**

Officer Amelio is an expert on police practices who plans to testify about the proper use of force, particularly the use of a baton, by police officers. In his report, Officer Amelio summarizes his conclusions as follows:

1. Assuming Officer Cerda's reasons for striking the window are true, Officer Cerda was reasonable in his actions that caused the back window to shatter.

2. Both Officer Cerda and Officer Styczynski's actions of swinging their batons, and Officer Cerda striking Lazendra Collins with his baton, were in line with nationally and generally accepted police practices and were consistent with their training under the circumstances with which they were presented.

3. The actions of Officer Styczynski that can be seen on video during his arrest of Lawrence Teague were in line with nationally and generally accepted police practices and consistent with his training.

(Amelio Rep. [106-1] at 5; *see also* Pl. Mot. [106] at 3–4.) At oral argument, the City separately

4

noted that Officer Amelio plans to testify in relation to the "X-pattern" use of the baton by CPD officers, a practice he also discussed in his written report. (*Id.* at 7.)

Plaintiffs argue that Amelio's testimony is inadmissible because it (1) invades the province of the jury and (2) renders an improper legal conclusion. (*See* Pl. Mot. [106] at 4–5.) In their words, "Mr. Amelio's testimony is not proffered to aid the jury in determining the facts, but to add the 'gloss of an expert opinion' to the defendants' disputed version [of events]." (*Id.* at 4.) As explained below, the court largely agrees—Officer Amelio's testimony is not necessary and will not be of assistance to the jury in determining the reasonableness in general of actions by the CPD officers, relevant legal standards, or CPD policy governing the use of force. As to the portion of his testimony that relates to the baton "X-pattern," the court defers a definitive ruling on admissibility pending *in camera* review of the pertinent testimony.

As the Seventh Circuit has repeatedly explained, the role of an expert witness is to assist the jury "with technical issues that laypeople would have difficulty resolving on their own"—not tell them which conclusion to reach.[3] *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013). True, an expert can testify "on a very great deal: an opinion is not objectionable merely because it 'embraces an ultimate issue to be decided by the trier of fact.'" *Florek v. Vill. of Mundelein, Ill.*, 649 F.3d 594, 602 (7th Cir. 2011) (quoting FED. R. EVID. 704(a)). The testimony

---

[3] As the Advisory Committee Notes to Rule 704 explain:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

*See* FED. R. EVID. 704.

of police practices experts can be helpful to the jury. This is especially true in those cases that turn on "something peculiar about law enforcement," such as complex police practices, weapons, mechanisms, or procedures that require an expert to explain. *See, e.g.*, *id*; *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) (no abuse of discretion in admitting the testimony of an expert called by plaintiffs on "reasonable investigative procedures and ways in which evidence from other witnesses did or did not indicate departures from those reasonable procedures"). But "the relevance of expert testimony about police practices or protocols" depends on the "level of factual complexity in the case." *United States v. Brown*, 871 F.3d 532, 538 (7th Cir. 2017). In cases involving relatively straightforward and "easily comprehensible" police activity, an expert's input is likely unnecessary, irrelevant, and unhelpful. *Id.* In *Brown*, for example, the Seventh Circuit affirmed the conviction of a police officer for violating a civilian's constitutional rights, concluding that the district judge did not err in barring expert testimony from a former officer that the defendant officer's conduct was consistent with department standards.

In this case, the core conclusion that Officer Amelio offers is that the CPD officers' use of force was "reasonable" and "in line with nationally recognized and generally accepted police practices." (Amelio Rep. [106-1] at 2, 5.) But the facts here are relatively uncomplicated. This case does not involve the use of a complex instrument; instead, it concerns the use of police baton—a simple tool used to inflict blunt, physical force. As the Seventh Circuit noted in what it called "a textbook example of easily comprehensible facts," the "everyday experience of lay jurors fully equips them to answer the reasonableness question."[4] *Brown*, 871 F.3d at 538. *Cf. United*

---

[4] Officer Amelio's expert report references the pertinent legal standard laid out in *Graham v. Connor*, 490 U.S. 386 (1989). Any discussion of the relevant law is barred, as it is the role of the court, not an expert witness, to instruct the jury on the law. *See Brown v. City of Chicago*, No. 18 C 7064, 2023 WL 2561728, at *5 (N.D. Ill. March 17, 2023) (finding that the "law on this matter is clear"). And to the extent that Amelio suggests that the officers acted in accordance with a legal mandate, such opinions are barred as an improper legal conclusion. *See, e.g.*, *Lurry v. City of Joliet*, No. 20 C 4545, 2023 WL 2138763, at *12 (N.D. Ill. Feb. 21, 2023) (barring testimony that "appl[ies] the facts and circumstances of the case to the applicable legal standards").

*States v. Lundy*, 809 F.2d 392, 395 (7th Cir. 1987) (affirming an arson conviction where a police department detective had offered "very technical" testimony regarding the cause and origin of the fire involving "burn patterns and burn rate"). In the court's view, this is a case involving straightforward facts: because blunt contact is the "most primitive form of force," the reasonableness of using the baton, given the context, is likely within the everyday experience and understanding of lay jurors. *Accord, Florek*, 649 F.3d at 602 (no abuse of discretion in barring expert testimony about the response of a reasonable officer to an arrestee suffering from heart attack symptoms) (internal quotation marks omitted) (quoting *Kopf*, 993 F.2d at 379).

It is thus not clear to the court that Officer Amelio's testimony would be helpful to the jury, who will view a video recording of much of this encounter. His report's conclusions appear to rest largely on his own viewing of the video and review of the deposition transcripts, which is the same evidence that will be put to the jury at trial. Jurors are well equipped to reach their own conclusions based on their apprehension of this evidence and their (equally legitimate) understanding of reasonableness. To the extent, then, that Amelio's conclusions amount to his opinion on how this case ought to be resolved, those conclusions are barred. *See, e.g.*, *Nunez v. BNSF Ry. Co.*, 730 F.3d 681, 684 (7th Cir. 2013) (finding that an expert witness may not "wrap [a] lay witness in the expert's prestige and authority"); *Giuffre v. Jefferson*, No. 14 C 3692, 2017 WL 951239, at *2 (N.D. Ill. Mar. 10, 2017) ("Expert testimony cannot be offered merely for the purpose of bolstering the credibility of a party's version of the facts.").

To the extent Officer Amelio proposes to offer an opinion on the policies or training practices of the Chicago Police Department (*see* Amelio Rep. [106-1] at 6–8), the court has a further concern: it is not clear that such evidence is relevant to the § 1983 claims. As courts in this circuit have repeatedly explained, excessive force is a question of constitutional law, not department policy. *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006).[5] Officers'

---

[5] In *Brown*, the Seventh Circuit recognized that *Thompson* does not "establish[] a rule that evidence of police policy or procedure will *never* be relevant to the objective-

compliance (or non-compliance) with departmental policy is "not relevant" to the question of whether the officers' use of force violated the Fourth Amendment. *United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019). To the extent that it is relevant to the state law tort claims,[6] it is not clear why expert testimony on these matters would be helpful to the jury. A lay witness (or, indeed, the officers themselves) would be in a position to competently testify to CPD policy and training practices, and there is no indication that these policies and practices are complex enough to necessitate an explanation or independent application by an expert witness.[7] *See Legg v. Pappas*, 383 F.App'x 547, 550 (7th Cir. 2010) (affirming summary judgment for officers in an excessive force case but concluding that the district court did not abuse its discretion in excluding testimony of a "police practices" expert).

The City makes a number of arguments to the contrary, but most are not persuasive. The City's first argument is that "the average juror generally lacks familiarity with the policies and procedures that govern police conduct." (Def. Opp. [110] at 5.) In support, the City cites to *Garrit v. City of Chicago*, No. 16 C 7319, 2022 WL 124554 (N.D. Ill. Jan. 13, 2022), where Judge Cummings of this court was willing to admit certain expert testimony on matters such as the

---

reasonableness inquiry." 871 F.3d at 537. As noted, however, the *Brown* case affirmed exclusion of the expert testimony, even in a criminal prosecution under 18 U.S.C. § 242, where intent is an element of the offense. *See* 18 U.S.C. § 242 ("willfully"). Departmental policy is often relevant in such prosecutions, given the necessity of proving intent, but ordinarily not in civil cases brought under § 1983. *See United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019) (barring evidence of police policy or training "would be especially excessive in the § 242 context, where an officer's intent is at issue . . . ; § 1983, unlike § 242, is a civil statute that lacks a specific-intent requirement").

[6] The City asserts that Officer Amelio's intent is relevant to the tort law claims on the question of whether the officers conduct was "willful and wanton." (Def. Opp. [110] at 10.)

[7] Amelio is an active-duty police officer and, thus, an employee of the City. There is no rule barring an employee from testifying as an expert on behalf of their employer; it is "well-established that an expert's bias is not a proper basis to bar testimony under *Daubert*," *Cage v. City of Chicago*, 979 F.Supp.2d 787, 827 (N.D. Ill. 2013) (collecting cases). Amelio's affiliation with the City could be explored on cross-examination. As discussed further below, however, the fact that Amelio is a Chicago officer raises the separate concern that his testimony will be "needlessly . . . cumulative." *See* FED. R. EVID. 403.

"capabilities of various firearms." *Id*. at *3. The proper operation of a firearm, the capabilities of that weapon, and the damage that it can inflict, were arguably relevant there, a case involving deadly force, and outside the realm of standard juror knowledge. But Judge Cummings barred much of the proposed expert testimony, including the expert's views about "whether the officers' conduct was consistent with the Chicago Police Department's use of force policies," the training that the defendant officers had received, or whether the physical evidence was consistent with the officers' accounts. *Id.* at *6-7. That some of the proposed expert testimony was appropriate in *Garrit* does not satisfy this court that Officer Amelio's testimony will be helpful in this one.

The City's reference to *Jimenez v. City of Chicago* also fails, for similar reasons. In *Jimenez*, the City appealed from a jury verdict in favor of a man wrongfully convicted of murder. 732 F.3d at 713–14. At trial, the plaintiff had presented an expert witness to testify on the "reasonable practices for police investigations" and how a particular investigation "departed from those practices." *Id.* at 719. The Court of Appeals agreed that the testimony "tended to show that the errors in defendants' handling of the investigation were so severe and numerous as to support an inference of deliberate wrongdoing in violation of the Constitution." *Id.* The City asserts that *Jimenez* demonstrates that "an expert's testimony about investigative procedures and ways in which the relevant players did or did not depart from them [is] not a legal conclusion." (Def. Opp. [110] at 9.) But the wrongful conviction claim in *Jimenez* required a showing of intent; in an excessive force case, in contrast, the inquiry is an objective one: whether the officer's actions were "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. *Graham*, 490 U.S at 397. Importantly, the testimony in *Jimenez* was offered by the *plaintiff*, who obviously could not opine himself on proper police practices. Here, in contrast, the expert is being offered by *Defendants*, in circumstances where the involved officers can themselves explain their own actions during trial.

The City also points to the Seventh Circuit's opinion in *Florek*, where the court observed that "'any objective test implies the existence of a standard of conduct"; the City suggests that

9

where the standard of conduct is a relatively specific one, "it is more likely that Rule 702's line between common and specialized knowledge has been crossed." (Def. Opp. [110] at 6 (quoting *Florek*, 649 F.3d at 602).) The court is uncertain of the thrust of this argument but notes that, as explained, the tools and practices at use in this case are not so complex as to require the testimony of an expert with specialized knowledge. If the City contends that a police expert is required to explain how a "reasonable officer" would conduct himself, the court disagrees. Expert testimony on complex police practice or other forms of "specialized knowledge" may be helpful to the jury in some contexts, but the legal standard in this case is governed not by a *police officer*'s understanding of what a reasonable police officer would do, but instead by a *juror*'s understanding of the actions of a reasonable police officer.

The court is thus inclined to grant Plaintiff's motion to exclude this testimony, with one potential limited exception: Officer Amelio's testimony about baton technique might be helpful to the jury.[8] In his report, he claims that the video shows officers waving their batons in an "X-pattern," noting that "[o]fficers are trained that swinging the baton in an 'X' motion in circumstances such as these helps them create a 'zone of safety' for everyone involved." (Amelio Rep. [106-1] at 7.) To the untrained eye, the officers' use of the baton might come across as random, disorganized swings designed to strike a suspect. To avoid confusion, the jury needs to hear this evidence. *Cf. Kopf*, 993 F.2d at 379 (finding that expert testimony on the "prevailing standard of conduct" on the use of slapjacks [a similar weapon] is appropriate).

It is less clear, however, whether an *expert* witness is needed to explain this technique.

---

[8] For the first time in their Reply Brief, Plaintiffs challenge Amelio's qualifications, noting his limited experience training officers in baton usage. (Pl. Reply [111] at 2.) Plaintiffs made reference to a similar argument in their opening brief, noting that Amelio "admits in his deposition that he has never trained anyone outside of SWAT except for one time during a NATO summit" (Pl. Mot. at 2), but they do not challenge his qualifications, so the court declines to consider it as this time. The court does note that Amelio's extensive experience "instructing officers on crowd control," which is at issue here, is likely sufficient to render him an expert in the proper use of a baton. (*See* Def. Opp. [110] at 4.)

On first blush, the X-pattern technique also appears to be relatively straightforward and not one of the "specialized" or "peculiar" techniques that requires the explanation of an expert witness. *See Garrit*, 2022 WL 124554, at *4 (holding expert testimony on firearms use admissible). Surely the officers themselves, who employed the X-pattern, can explain the need for and propriety of the procedure. The City appears to recognize that the officers have been trained on the technique and are shown using it in the video. Officer Amelio's testimony on the issue may thus be unnecessary, cumulative, and improper, to the extent it attempts to bolster the credibility of lay witnesses. *See Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000) ("[A]n expert cannot testify as to credibility issues. Rather, credibility questions are within the province of the trier of fact . . . ."). The court is inclined to exclude this opinion as well; but given these unanswered questions, the court will defer a definitive ruling pending an *in camera* review of Officer Amelio's pertinent testimony.

## **CONCLUSION**

The motion to exclude Amelio's testimony and strike his expert report [106] is granted in part. The parties are directed to confer and, prior to trial, make Officer Amelio available for live testimony.

ENTER:

Dated: November 7, 2025

_____
REBECCA R. PALLMEYER
United States District Judge